UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

TODD R. RICH,                              )
                                           )
       Plaintiff                       )
                                           )
v.                                         )     No. 2:10-cv-300-GZS
                                           )
NORMAN OLSEN, COMMISSIONER,                )
MAINE DEPARTMENT OF MARINE                 )
RESOURCES,[1]                              )
                                           )
       Defendant                       )


### RECOMMENDED DECISION ON MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT, AND FOR PARTIAL SUMMARY JUDGMENT

The defendant in this action asserting claims under 42 U.S.C. § 1983 and Article I, § 6-A of the Maine Constitution seeks dismissal of the complaint for failure to state a claim upon which relief may be granted and, in the alternative, summary judgment on both claims. The plaintiff seeks partial summary judgment on his federal liability claim. I recommend that the court grant the motion to dismiss as to Count Two of the plaintiff's complaint and deny it as to Count One; grant the defendant's motion for summary judgment as to Count One; and deny the plaintiff's motion for partial summary judgment.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), I have substituted the name of the current commissioner for that of the commissioner at the time this action was brought.

1

## I. Motion to Dismiss

### A. Applicable Legal Standard

The defendant's motion invokes Fed. R. Civ. P. 12(b)(6). Motion to Dismiss and for Summary Judgment by Defendant ("Defendant's Motion") (Docket No. 11) at 1.

With respect to Rule 12(b)(6), as the Supreme Court has clarified:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).[2]

"In ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Id*. "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

---

[2] In so explaining, the Court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. at 45-46). The Court observed: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

## B. Factual Background

The complaint includes the following relevant factual allegations.

The plaintiff, a resident of Long Island, Maine, was a lobsterman. Complaint Alleging Civil Rights Violations ("Complaint") (Docket No. 1) ¶ 1. On February 22, 2008, the State of Maine brought a civil complaint against the plaintiff, alleging that he violated 12 M.R.S.A. § 6434 and Rule 25.05 of the Maine Department of Marine Resources ("Department") by moving or removing lobster traps without the written permission of a marine patrol officer. *Id*. ¶ 4. On March 24, 2008, a judgment entered against the plaintiff without contest on both counts. *Id*. ¶ 6. The plaintiff paid the associated fine. *Id.*

On April 23, 2008, the plaintiff received notice from the Department of a three-year suspension of his lobster and crab fishing license, based on his violation of 12 M.R.S.A. § 6434, effective May 3, 2008. *Id*. ¶ 7. Under the language of 12 M.R.S.A. § 6402 then in effect, a three-year suspension could only be imposed on a "permit holder convicted in court of violating section 6434." *Id*. ¶ 8. The plaintiff then brought a complaint seeking a judgment declaring the Department's action void. *Id*. ¶ 11.

The suspension remained in effect during the pendency of that litigation. *Id*. ¶ 12. On May 11, 2010, the Maine Law Court held that "pursuant to the plain language of section 6402 in effect at the time of his adjudication, the three-year license suspension does not apply to" the plaintiff. *Id*. ¶ 13. As of that date, the plaintiff had been suspended from lobstering and crabbing for 734 days. *Id*. ¶ 14. The maximum suspension that could have been given to the plaintiff was 365 days. *Id*. ¶ 15.

The plaintiff's business could have survived a 365-day suspension but did not survive the 734-day suspension. *Id*. ¶ 16.

## C. Discussion

The defendant contends that Count One of the Complaint fails to state a claim upon which relief may be granted because it does not allege that he had a property interest in the fishing and crabbing license and that the defendant deprived him of that interest without due process. Defendant's Motion at 1, 5. The plaintiff responds that "[o]ur complaint gives more than adequate notice of the claim that [the defendant] took Mr. Rich's property in violation of his Fourteenth Amendment right to due process." Plaintiff's Memorandum in Opposition to Motion to Dismiss (Docket No. 12) at 1. He asks, "[s]hould the court be inclined to grant this motion," for two business days in which to file a more detailed amended complaint. *Id*. at 3.

I agree with the plaintiff that, construing the Complaint with the benefit of all reasonable inferences to be drawn in his favor, Count One states a claim upon which relief may be granted. *See Sepúlveda_Villarini v. Department of Educ.*, 628 F.3d 25, 28-29 (1st Cir. 2010). The Complaint is not detailed, but it is minimally sufficient to assert the elements of a claim of a constitutional violation.

The result is different with respect to Count Two. The defendant asserts that a claim arising under the Maine Constitution may not be brought via 42 U.S.C. § 1983, Defendant's Motion at 5-6, and it appears that the Complaint does invoke only federal statutory jurisdiction, Complaint ¶ 3. In any event, the plaintiff does not respond to the motion to dismiss this count and thus has waived any opposition. *See, e.g., Elkins v. Elkins*, Civ. No. 09-582-P-H, 2010 WL 2731394, at *1 (D. Me. June 7, 2010). The motion to dismiss should be granted as to Count Two. *Id*. Because the plaintiff did not respond to the motion to dismiss this count, he is not entitled to an attempt to revise that portion of the Complaint.

## II. Motions for Summary Judgment

### A. Applicable Legal Standard

#### 1. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

## 2. Local Rule 56

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209,

213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

### B. Factual Background

The following undisputed material facts are appropriately presented in the parties' statements of material facts submitted pursuant to Local Rule 56.

Before the events giving rise to this action, the plaintiff was a full-time lobsterman who lived on Long Island, Maine, and owned a 40-foot lobster boat. Plaintiff's Statement of Material Facts Not In Dispute ("Plaintiff's SMF") (Docket No. 16) ¶ 1; Response to Plaintiff's Statement of Material Facts in Support of Motion for Partial Summary Judgment by Defendant ("Defendant's Responsive SMF") (Docket No. 22) ¶ 1. During the period relevant to the allegations in the Complaint, George Lapointe was the Commissioner of the Maine Department of Marine Resources. Statement of Material Facts in Support of Motion for Summary Judgment by Defendant ("Defendant's SMF") (Docket No. 10) ¶ 2; Plaintiff's Response to Defendant's Statement of Facts ("Plaintiff's Responsive SMF") (Docket No. 18) ¶ 2.

On January 18, 2008, Maine Marine Patrol Officer David Barry issued the plaintiff a Uniform Summons and Complaint, charging him with molesting lobster gear in violation of 12 M.R.S.A. § 6434. *Id.* ¶ 3. On February 21, 2008, the State of Maine brought a civil action against the plaintiff, Count I of which alleged that he did "raise, lift, transfer, possess or fish with lobster traps, which he was not the licensed owner of." *Id.* ¶ 4. Count II alleged that the plaintiff violated 12 M.R.S.A. § 6174(3) by moving or removing lobster traps without the written permission of a Marine Patrol Officer. *Id.* ¶ 5.

The charges arose from the seizure of eight lobster traps belonging to another lobsterman from the deck of the plaintiff's boat on November 20, 2007. *Id*. ¶ 6. The plaintiff entered denials to both offenses on February 22, 2008, through counsel. *Id*. ¶ 7. On February 21, 2008, the State also brought a criminal charge against the plaintiff, alleging that he had exercised control "over the property of another that [the] person knows to have been lost or mislaid or to have been delivered under a mistake as to the identity of the recipient or as to the nature or amount of the property and, with the intent to deprive the owner of the property at any time subsequent to acquiring it, the person fails to take reasonable measures to return it." *Id*. ¶ 8.

The plaintiff waived arraignment on this charge and entered a "not guilty" plea through counsel. *Id*. ¶ 9. The assistant district attorney in charge of the cases offered to dismiss the theft charge in exchange for a "plea of guilty" to the two civil charges. *Id*. ¶ 10. The plaintiff accepted the offer on March 10, 2008. *Id*. On March 24, 2008, a default judgment was entered against the plaintiff on the two civil counts, Counts I and II, when he failed to appear for a scheduled hearing. *Id*. ¶ 11.

On April 2, 2008, Maine Patrol Officer Barry filed an investigative report with the Bureau of Marine Patrol, noting the court's disposition of the molesting lobster gear charge and indicating that there was a mandatory three-year license suspension from the date of conviction under 12 M.R.S.A. § 6402. *Id*. ¶ 12. The division commander reviewed and approved the report. *Id*. A letter dated April 23, 2008, was drafted, advising the plaintiff that his lobster and crab fishing license was suspended for three years from the date of his conviction for molesting lobster gear in violation of 12 M.R.S.A. § 6434. *Id*. ¶ 13. Lapointe reviewed the letter and signed the Notice of Suspension. *Id*. ¶ 15.

The language of 12 M.R.S.A. § 6402 in effect at the time of the suspension of the plaintiff's license stated, in part, that the three-year mandatory license suspension applied to "a permit holder convicted in court of violating section 6434." *Id.* ¶ 14. Preventing the molestation of lobster gear has long been an important component of the lobster fishery, and the Department sponsored the legislation making these violations civil offenses in 2007 with the intent of increasing findings of violations but not reducing the severity of the charge. *Id.* ¶ 16. The decision to suspend the plaintiff's license was based on Lapointe's reading of the suspension language in 12 M.R.S.A. § 6402 and his understanding that the mandatory suspension provisions of that statute applied to any violation of 12 M.R.S.A. § 6434, regardless of whether that violation resulted in a civil adjudication or criminal conviction. *Id.* ¶ 18.

The plaintiff received the letter dated April 23, 2008, advising him that his license was suspended until March 24, 2011. *Id.* ¶ 21. On May 13, 2008, the plaintiff's attorney filed a motion to set aside the default judgment in the state-court action. *Id.* ¶ 22. The motion stated that the plaintiff did not know that admitting to a violation of section 6434 carried a mandatory three-year suspension of his license. *Id.* ¶ 23. It also said that the plaintiff's attorney failed to inform him of this fact, and that he would never have agreed to admit a violation of section 6434 had he known that the result would be a three-year suspension. *Id.* ¶ 24.

In support of his opposing argument that the plaintiff was aware of the collateral consequences of his plea, the assistant district attorney referred to a copy of messages the plaintiff left on "the victim's answering machine" that demonstrated that the plaintiff was aware as of January 2008 that he was facing a three-year license suspension. *Id.* ¶ 28. On May 19, 2008, a judge of the Maine District Court entered an order denying the motion to set aside the default, which stated as follows:

9

> The Court has considered the Defendant's Motion to Set Aside Default Judgment and has listened to the tape of Defendant's phone message to the victim. The Defendant clearly understood that he faced a three year loss of license if found to have committed the civil violation[] of Molesting Lobster Gear. He advised the District Attorney by counsel that he would admit both counts and he subsequently paid the fine. While the matter was actually disposed of by default when neither the Defendant nor his attorney appeared on the scheduled hearing date, the Defendant was effectively waiving appearance and accepting the knowing (per telephone messages) consequences of his actions.

*Id*. ¶ 29.

The plaintiff's motion for reconsideration of this order was denied on May 28, 2008. *Id*. ¶ 30. By a complaint dated May 21, 2008, the plaintiff filed an appeal under M. R. Civ. P. 80C of the April 23, 2008, suspension of his license. *Id*. ¶ 32. The appeal claimed that the suspension was "arbitrary, capricious, and in violation of the plaintiff's right to due process and equal protection under law, in that defendant has suspended his license despite his not having been "convicted in court." *Id*. ¶ 35. By motion dated July 16, 2008, the plaintiff sought and was granted an extension of time to file his brief in the Rule 80C action from August 1, 2008, to October 1, 2008. *Id*. ¶ 36.

In his Rule 80C brief, the plaintiff argued that he was not "convicted" of violating section 6434 because his admission to a violation of that statute was an "adjudication" of a civil offense. *Id*. ¶ 37. In his opposition, the assistant attorney general who represented the Department observed that 12 M.R.S.A. § 6401 authorized "the Commissioner to suspend the license of any person 'convicted or adjudicated in court of violating any section of the marine resource laws." *Id*. ¶ 39. The Superior Court rejected the plaintiff's statutory interpretation as "unreasonable" and "counter to the clear intent of the legislature." *Id*. ¶ 44. The Rule 80C appeal was denied on May 20, 2009. *Id*. ¶ 47. The plaintiff's motion for reconsideration was denied on June 22, 2009. *Id*. ¶ 48.

The plaintiff appealed to the Maine Law Court. *Id*. ¶ 50. In its opinion, the Law Court observed:

> The difficulty in this case arises from the fact that, effective September 2007, shortly before Rich's illegal conduct, the Legislature amended section 6434 so that the illegal conduct was no longer a crime. However, the correlative statute, section 6402, was not contemporaneously changed, and its language continued to refer to a "conviction" rather than a civil adjudication.

*Id*. ¶ 53. The Law Court held that the plaintiff had not been "convicted" of violating section 6434. *Id*. ¶ 58. Accordingly, it determined that "pursuant to the plain language of section 6402 in effect at the time of his adjudication, the three-year license suspension did not apply to him." *Id*. The Law Court did not reach the plaintiff's argument that his suspension should be vacated because his due process rights were violated. *Id*. ¶ 59.

### C. Discussion

### 1. The Merits

The plaintiff apparently alleges a violation of his constitutional right to procedural, rather than substantive, due process. Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's Motion") (Docket No. 15) at 6-14. In this case, success on a claim of such a violation requires proof of the existence of a property right in the plaintiff and the deprivation of that interest by the state without due process of law. *Trafford v. City of Westbrook*, 669 F.Supp.2d 133, 143 (D. Me. 2009). In his Motion, the plaintiff spends a good deal of time arguing that he had a property interest in his lobstering and crabbing license, Plaintiff's Motion at 7-13, but the defendant does not seriously dispute the point. I will accordingly assume that the property interest element of the legal test has been established.

Similarly, there can be no question but that state action, or action under color of state law, is present in this case. The named defendant is sued in his official capacity as an official of state

government, and it is clear that the actions of the former commissioner were taken under color of state law. Indeed, it is the interpretation of state law that is basically at issue in this case.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Trafford*, 669 F.Supp.2d at 145 (citation omitted). The defendant contends that the district court proceeding before the statutorily-mandated suspension of the plaintiff's license and the Rule 80C proceeding thereafter were sufficient to meet constitutional muster. Defendant's Motion at 6-10. The plaintiff attempts to cast the controversy in different terms; he argues that the imposition of a three-year suspension was "imposed with no more process than Mr. Lapointe's April 23, 2008 ukase." Plaintiff's Motion at 13. Specifically, he asserts that "[t]he Maine District Court process gave [him] inadequate notice of the three year suspension." Plaintiff's Memorandum In Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") (Docket No. 17) at 2.

The plaintiff cites no authority for the necessary underpinning of his argument: that either the Maine District Court or the defendant had any constitutional duty to inform him of the existence of a statute requiring suspension of his license upon his conviction or his adjudication as a violator under the statute on which the court charges were based.[3] His argument concerning the final element of the procedural due process test is cursory: "There was no law allowing the three year suspension, a legal fact which renders the suspension in violation of Mr. Rich's right to due process." Plaintiff's Motion at 14. He cites no authority in support of this assertion, and it is not a correct statement of the applicable law.[4]

---

[3] The plaintiff said repeatedly in the state courts that his lawyer failed to tell him about the potential three-year suspension of his license, *e.g.*, Defendant's SMF ¶¶ 24-26, Plaintiff's Responsive SMF ¶¶ 24-26. That assertion has no relevance to the constitutional claim presented in this proceeding.
[4] The three cases that the plaintiff does cite as "on point" earlier in this brief section of his motion, Plaintiff's Motion at 13-14, are distinguishable. In none of the cases was the license suspension imposed after a court proceeding finding a condition that statutorily mandated suspension. *Freeman v. Blair*, 862 F.2d 1330, 1332 (8th Cir. 1988) (licenses suspended summarily, without findings required by statute); *Guillemard-Ginorio v. Contreras-Gómez*, 490

On a more basic level, there was no constitutional requirement for a pre-deprivation hearing in this case. The plaintiff addresses this issue only in his opposition to the defendant's motion for summary judgment, and he addresses it only in the context of notice. Plaintiff's Opposition at 1-4. But, "where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

It would certainly be impractical, as well as unnecessarily duplicative, to provide the holder of a lobstering license with a pre-deprivation hearing when the only statutory requirement for suspension has already been met. In this case, an adequate post-deprivation remedy, the Rule 80C appeal, was available and was pursued by the plaintiff. That is all that is necessary. *Brown v. Dunbar*, No. C07-82Z, 2008 WL 4443289, at *3 (W.D. Wash. Sept. 23, 2008) (daycare license); *Nnebe v. Daus*, __ F.3d __, 2011 WL 1338119, at *8-*9 (2d Cir. Apr. 7, 2011) (taxi driver's license). *See also Dixon v. Love*, 431 U.S. 105, 112-13 (1977) (pre-deprivation hearing not usually necessary where license suspension is "largely automatic" under applicable regulations).

The post-deprivation Rule 80C procedure is available immediately after the deprivation. In this case, the plaintiff filed his Rule 80C appeal just under a month after the date of the letter notifying him of the three-year suspension of his license. The availability and timing of this remedy is also important because the plaintiff admits that his license would have been suspended for one year, pursuant to 12 M.R.S.A. § 6401,[5] in any event. Plaintiff's Additional Facts

---

F.3d 31, 34 (1st Cir. 2007) (license suspended summarily; only qualified immunity at issue); *Chalkboard, Inc. v. Brandt*, 902 F.2d 1375, 1377 (9th Cir. 1990) (license summarily suspended; absolute and qualified immunity only issues).

[5] The statute provides, in pertinent part: "The commissioner may suspend any licenses or certificates issued under this Part if a person is convicted or adjudicated in court of violating any section of the marine resources laws. The

(included in Plaintiff's Responsive SMF, beginning at 22) ¶ 3. Thus, no injury could have been caused by the absence of a pre-deprivation remedy, and any injury caused by an inadequate post-deprivation remedy, if any, could only have begun one year after March 24, 2008, the date of the adjudication of violation of section 6434. In addition, the two-month extension sought by the plaintiff during the Rule 80C proceeding should not be counted when determining when any such injury began.

The plaintiff's motion proffers no argument specifically addressing the sufficiency of the post-deprivation remedy in this case.[6] In his response to the defendant's motion, he takes the position that the issue does not even arise, because the suspension was not random or unauthorized.[7] Plaintiff's Opposition at 6-8. However, as I have noted above, those are not the only circumstances under which the legal analysis of a procedural due process claim may proceed to consider the adequacy of a post-deprivation remedy. I have already concluded that any pre-deprivation remedy was sufficiently impractical in the circumstances of this case to allow consideration of a post-deprivation remedy.

The plaintiff also argues that the Rule 80C remedy is constitutionally deficient because it took too long; the suspension was effective March 24, 2008, and the Law Court decision on his Rule 80C appeal was issued on May 11, 2010. Plaintiff's Opposition at 9. However, the summary judgment record does not support the plaintiff's assertion that "[b]y that time, Mr. Rich had lost his boat and was out of the fishery." *Id.* The only citation to support this assertion is to paragraph 20 of his own statement of material facts, which states, in its entirety: "Mr. Rich's

---

suspension of a license or certificate may not exceed: One year from the date of the first conviction or adjudication." 12 M.R.S.A. § 6401(1) & (2) (title, subtitles, and numbers omitted).

[6] He does discuss Rule 80c briefly, under the heading "Collateral estoppel or issue preclusion." Plaintiff's Motion at 27-31. That discussion does not mention post-deprivation remedy.

[7] Given the strength, emphasis, and frequency of the plaintiff's contention that the defendant's erroneous interpretation of the interaction of 12 M.R.S.A. §§ 6402 and 6434, standing alone, constitutes a violation of his constitutional rights, as well as a wrongful reading of the statutes' "plain meaning," it is hard to see how he can take the position that that interpretation was also "authorized."

business could have survived a 365 day suspension, but the illegal suspension ruined his business." Plaintiff's SMF ¶ 20. Setting aside the defendant's request to strike this paragraph, Defendant's Responsive SMF ¶ 20, it simply does not support the statement made in the plaintiff's opposition brief.

By the terms of the plaintiff's own argument, the first round of the Rule 80C proceeding, in Maine Superior Court, did offer the possibility that he could be made whole, had the Superior Court's decision on May 20, 2009,[8] been in his favor. A post-deprivation remedy does not become constitutionally infirm merely because it does not result in a decision in favor of the licensee. It is the opportunity for a hearing, not the outcome, that is determinative.[9]

The plaintiff's emphasis on the commissioner's suspension decision, which the Maine Law Court ultimately determined to be a mistake, as constituting a deprivation of constitutionally-required due process makes this case similar to *Herwins v. City of Revere*, 163 F.3d 15 (1st Cir. 1998). In that case, the plaintiff owned an apartment building, which agents of the defendant city investigated and found to be unfit for human habitation. *Id.* at 16. The tenants were informed of this finding and immediately vacated the building. *Id.* Seven months later, the city plumbing inspector told the plaintiff that he would have to provide a separate bathroom for each unit in order to reopen the building. *Id.* at 17.

The plaintiff took an appeal to a state board to review the plumbing inspector's determination. *Id.* The appeal was rejected, and the plaintiff did not seek further review of the decision in court. *Id.* Instead, he filed suit alleging that the inspector and the city violated his

---

[8] That is, within a year of the start of the suspension on March 24, 2008, excluding the two months' extension requested by the plaintiff.
[9] In addition, the plaintiff could have sought a stay of the suspension pending the outcome of his Law Court appeal. His assertion that such a request would undoubtedly have been denied, Plaintiff's Opposition at 11-12, is mere speculation. *See, e.g., Fox v. Life Ins. Co. of N. Am.*, No. CIV.A. 99-264-P-C, 2000 WL 1375517, at *9 (D. Me. Sep. 20, 2000) (reiteration of defendant's position does not establish futility of appeal of its decision); *Harper v. School Adm. Dist. No. 37*, 727 F. Supp. 688, 693 (D. Me. 1989).

constitutional right to due process of law. *Id*. The court held that failing to give the plaintiff notice of his appeal rights was not a denial of due process but only a violation of state law. *Id*. at 18. The jury found that there was no emergency in the building at the time a city board of health inspector determined that it was unfit for human habitation, but, the First Circuit said, "that shows only that [the inspector's] substantive decision was wrong; he was not required to hold a hearing before declaring an emergency." *Id*. at 19.

As is true in the instant case, the only feasible procedure in *Herwins* was a post-deprivation remedy, which the city in that case, and the state in this case, provided. *Id*. As the First Circuit observed:

> Absent [the inspector's] mistake, Herwins would have had a prior hearing before closure. But the Supreme Court has ruled that in such cases there is no denial of *procedural* due process, even by the official, so long as the state provides an adequate means of redress. The Supreme Court has held this both where the official's action is negligent and where it is deliberate.

*Id*. (emphasis in original; citations omitted). *See also Rogers v. Sylvester*, 570 A.2d 311 (Me. 1990) (mistaken classification of prisoner's terms of confinement as consecutive rather than concurrent did not violate constitutional right to due process of law).

On the showing made, the defendant is entitled to summary judgment on Count One.

### 2. Other Defenses

This result with respect to the merits of Count One of the Complaint, if adopted by the court, makes it unnecessary to reach the other defenses asserted by the defendant. Defendant's Motion at 11-20; Plaintiff's Motion at 14-34.

### III. Conclusion

For the foregoing reasons, I recommend that (1) the defendant's motion to dismiss be **GRANTED** as to Count Two of the Complaint, and otherwise **DENIED**; (2) that the defendant's

16

motion for summary judgment be **GRANTED** as to Count One of the Complaint, the only remaining count; and (3) that the plaintiff's motion for partial summary judgment be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of May, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge